*In re* KATHERINE HOLLIS, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Edward Hollis, Jr., Respondent-Appellant).

Fourth District   No. 4—84—0855

Opinion filed August 15, 1985.

Thomas A. Bruno, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Kevin T. McClain, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

The respondent, Edward Hollis, Jr., appeals from an order of the trial court, finding him an unfit parent and terminating his parental rights. The respondent and Cathy Hollis are the parents of Katherine Hollis, who was born on April 28, 1984. On May 30, 1984, the Department of Children and Family Services (Department) filed a petition pursuant to section 4—1 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—1) after the baby suffered a fractured femur. The trial court, however, dismissed this petition. On July 19, the Department received a report of neglect after the child received a bruise under her left eye. On August 31, the child's grandmother brought her to the Kirby Hospital emergency room. The child had a collapsed lung and broken ribs. On September 5, the Department again filed a petition, alleging the respondent and Cathy Hollis were unfit parents and requesting termination of their parental rights. The court held a shelter care hearing on the same day pursuant to section 3—1 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 703—1). The trial

court decided the State had met its burden of establishing probable cause to believe the child was abused and granted temporary custody to the Department.

The court held an adjudicatory hearing on October 22, 1984. Dr. James Manint treated Katherine Hollis when she was brought to the emergency room on August 31. The child had difficulty breathing. A chest X ray revealed a collapsed lung and four fairly new fractures of the right ribs. There were also numerous healing fractures of the left ribs. Manint testified the fractures would not be noticeable simply by looking at the child. Dr. Robert Boucek treated the child after she was transferred to Mercy Hospital. Boucek testified the fractures of the right ribs were less than a week old, while those of the left ribs were between one and six weeks old. Boucek testified the only noticeable symptom of the fractures would have been irritability. Dr. Robert Blubagh testified the baby also suffered internal bleeding. He testified a baby's ribs are very pliable and an extraordinary amount of force would be required to fracture them. Dr. Todd Lyon, the baby's regular doctor, testified he noticed small bruises on the baby's chest during a checkup on August 28. He asked the respondent about them, but the respondent denied any knowledge of their origin. Cheryl McIntire, a social worker for the Department, talked with the respondent on September 1. He admitted he had become frustrated on August 30 because he could not make the baby stop crying. He had squeezed the baby and the baby had cried louder. McIntire talked to the respondent again on September 4 along with Urbana police officer Brian Kennel. The respondent again admitted squeezing the baby's chest on August 30. He also related a similar incident which had occurred a month earlier. When Kennel asked respondent how he remembered the specifics of the earlier incident, the respondent stated, "You don't forget something like that when you hurt your child."

The trial court concluded Katherine Hollis was an abused minor because of her injurious environment and because the respondent had inflicted physical injury by other than accidental means. The court also found the minor was neglected because the respondent had failed to provide necessary medical care. The court held there was clear and convincing evidence of the respondent's unfitness but not clear and convincing evidence of the mother's unfitness.

A dispositional hearing was held on November 28, 1984. The respondent's parents, pastor, and Sunday school teacher all testified about their observations of the respondent as a good parent. The trial court decided the best interests of the child required the termination of the respondent's parental rights. The court gave custody to the De-

partment and stated custody was not to be returned to the mother until expressly ordered by the court.

The respondent contends the evidence failed to demonstrate his unfitness as a parent. Unfitness must be proved by clear and convincing evidence. A finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. The trial court's opportunity to view and evaluate the parties and their testimony is superior to that of the reviewing court. Accordingly, the trial court's finding should be given great deference. *In re Brown* (1981), 86 Ill. 2d 147, 427 N.E.2d 84.

The respondent argues the trial court erred in focusing on the result of his conduct rather than his intent. He maintains he did not intend to inflict physical suffering. Contrary to the respondent's assertion, the trial court found that he did intend to hurt the child and that the injuries were not the result of an accident. The respondent notes the court also found that he did not intend to fracture the child's ribs or puncture her lung. He contends the State had to prove his conduct was wilful or malicious in order to amount to extreme or repeated cruelty. The respondent relies on *People v. Miller* (1983), 116 Ill. App. 3d 361, 452 N.E.2d 391, where the court held the mental state of wilfulness is necessary to commit the offense of cruelty to children. The statute prescribing that offense, however, contains the word "wilful." The grounds for parental unfitness are set forth in section 1(D) of the Adoption Act. (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D).) Nowhere in that section does the word "wilful" or any other word relating to the state of mind or will of the parent appear. In fact, a parent can be found unfit without being at fault. (*In re Devine* (1980), 81 Ill. App. 3d 314, 401 N.E.2d 616.) We agree with the trial court that result rather than intent are more important in defining cruelty. In construing the Act, the best interests and welfare of the child are of paramount consideration. (Ill. Rev. Stat. 1983, ch. 40, par. 1525.) The respondent intended to hurt the child, and the fact that he did not intend or know the extent of her injuries is irrelevant.

The respondent argues the trial court erred in failing to consider his total parental conduct. Citing *In re Drescher* (1980), 91 Ill. App. 3d 658, 415 N.E.2d 636, he contends his efforts rather than the success of his efforts must be considered in determining his fitness. *Drescher* dealt with an allegation that a parent was unfit for failing to maintain a reasonable degree of interest, concern, or responsibility for the welfare of the child. That case has no application here. We are more concerned with the physical health of the child than with any lack of interest on the part of the respondent. (*In re Dalton* (1981), 98

Ill. App. 3d 902, 424 N.E.2d 1226.) In the area of health, results not efforts are paramount. (*In re Tolbert* (1978), 62 Ill. App. 3d 927, 378 N.E.2d 565.) The respondent also cites *Adams v. Adams* (1982), 103 Ill. App. 3d 126, 430 N.E.2d 744, for the proposition that the trial court must examine the conduct of the parent over the entire period of time in question rather than focusing on any single, isolated period of time. We read *Adams* to require that parental conduct be appropriate during the entire time in question rather than just at certain times. When a parent engages in extreme or repeated cruelty, his conduct at other times is largely irrelevant.

The respondent maintains the trial court erred in terminating his parental rights instead of allowing him an opportunity to attempt rehabilitation. He contends the period of time between the shelter care hearing and the dispositional hearing was not long enough to achieve rehabilitation. The court, however, focused not on his lack of achievement but on his lack of effort. The court noted help had been offered but had not been accepted. The court found the respondent had not even "taken the first step toward understanding why it happened and preventing it from happening again."

The trial court relied on reports from the Department and from Carolyn Weyand, the Hollis' mental health counselor. The Department's report stated the Hollis' had previously received services from the Child-Adolescent Program of the Mental Health Center and from the Public Health Department. The Hollis' participation had been minimal and had not prevented the abuse of the child. The Department had also offered its services after the child had suffered the fractured femur, but the Hollis' refused these services. In addition, both parents denied the severity of the child's injuries and showed a lack of emotion in regard to the child's situation. Weyand found the respondent's communication style created suspicion concerning his trustworthiness. While the respondent was willing to cooperate, he was without insight as to his desire for help or in explaining his motivation for squeezing his daughter. The mental health staff concluded he would not benefit from counseling due to his sociopathic personality, immaturity and substantial lack of insight. Weyand ceased counseling the respondent because she felt there was nothing more she could do. The respondent offered no evidence of any attempt to seek counseling elsewhere or any other possibility of rehabilitation.

The trial court clearly considered the best interest of the child in terminating the respondent's parental rights. The decision to terminate parental rights rests within the sound discretion of the trial court and the reviewing court will not interfere absent an abuse of

discretion. (*In re Dalton* (1981), 98 Ill. App. 3d 902, 424 N.E.2d 1226.) After carefully reviewing the record, we cannot conclude the trial court abused its discretion.

For these reasons, the order of the trial court is affirmed.

Affirmed.

MORTHLAND and TRAPP, JJ., concur.