*In re* D.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Wanda Wright, Respondent-Appellant).

Fourth District   No. 4—88—0567

Opinion filed June 8, 1989.

Diana Lenik, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent Wanda Wright appeals an order removing the minor, D.W., from her custody. The court found D.W. abused due to physical abuse, by other than accidental means, inflicted by Victor Blissit, D.W.'s father. (Ill. Rev. Stat. 1987, ch. 37, par. 802—3(2)(a)(i).) Respondent argues as to custody the order is against the manifest weight of the evidence. We agree the cause must be remanded as to custody.

The record reveals that respondent, 18 years old, and Blissit, 21 years old, are not married and live separately. On May 10, 1988, a petition was filed alleging D.W., 10 months old at the time, was physically abused by Blissit (count I) and abused due to an injurious envi-

ronment when he resided with respondent and Blissit (count II). The court later dismissed count II alleging environmental abuse.

At a shelter care hearing on May 10, Patrick Flannigan, an employee of the Illinois Department of Children and Family Services (DCFS), testified regarding the injury sustained by D.W. He stated that personnel at Mercy Hospital, where D.W. was taken on April 22, 1988, indicated that D.W.'s injury was not consistent with the version of events as reported by the parents. The examining physicians did not testify at this hearing; however, Flannigan testified regarding his conversations with three physicians involved in the case. The court found probable cause to sustain the allegations in the petition and ordered D.W. removed from the respondent and Blissit to the custody of DCFS with power to place.

An adjudicatory hearing was held on June 22, 1988. Two physicians testified regarding D.W.'s injuries. Dr. Stephen Monn, an internal medicine physician at Mercy Hospital, testified that he first examined D.W. in the emergency room at Mercy on April 22, 1988. Blissit brought D.W. to the emergency room. Blissit stated that D.W. was in his crib and crying when Blissit went to pick him up. According to Blissit, he was lifting D.W. out of the crib when he discovered his foot was caught in the rungs of the crib. Monn's examination of D.W. revealed a complete fracture of D.W.'s left femur across the shaft of the bone. Monn also stated that X-rays taken at that time revealed some compression had taken place in the leg. Compression means the two broken pieces of the bone had moved closer together, thereby shortening the bone.

Monn testified a significant amount of force was needed to cause D.W.'s leg to break as it had and he stated this was the first injury of its kind that he had seen in a child as young as D.W. He concluded the injury was not consistent with the story reported by D.W.'s parents. On cross-examination, Monn stated that if D.W.'s knee "was locked" and therefore his lower leg was prevented from moving, the fracture that resulted could occur. However, his examination of D.W. did not reveal any torsion was applied to D.W.'s leg.

Dr. Milton Carlson, an orthopedic surgeon practicing for 12 years and experienced in treating children with broken bones, testified that the bones of a 10-month-old child are hard to break. D.W.'s bones were normal other than the break to the left femur. He stated that the injury could have resulted from lifting D.W. as Blissit described; however, a significant amount of force on the leg was needed. He stated that he had never seen an injury like that D.W. sustained in a child through normal activity, even by catching a leg in a crib. While

D.W.'s leg was swollen, Carlson found no bruises or marks on the skin of D.W.'s leg.

Respondent did not testify at the adjudicatory hearing. Flannigan testified that respondent told him she was not present when the injury occurred. Respondent reported that she was at Blissit's apartment watching TV with Blissit and his brother-in-law and left 20 minutes prior to the time D.W. was injured. She stated no alcoholic beverages or drugs were consumed while watching TV.

Blissit also testified regarding the events of April 22. He stated he had four beers in the parking lot outside his apartment while respondent was inside with D.W. Blissit testified he came into his apartment about 10 p.m. and at about 10:20 p.m., one-half hour to 45 minutes after consuming the beer, D.W. started crying in his crib. He went into the room, picked up D.W. under his arms and pulled him up. It was then Blissit noticed D.W.'s feet were caught at the top (head) of the crib between the iron bar and a piece of wood. Blissit said he noticed right away something was wrong with D.W.'s leg, he went to get respondent, who lived across the street, and together they walked to the Mercy Hospital with D.W. Blissit stated he did not strike D.W., or try to break his leg, and he was not angry when he picked D.W. up out of his crib.

On cross-examination, Blissit stated respondent did not know he had been drinking beer outside his apartment. When examined by the court, Blissit stated that when he came inside after drinking the beers, respondent asked him if he had been drinking. He stated he smiled at respondent and didn't answer her. The record reveals that Blissit weighs 135 pounds and he consumed four 12-ounce cans of beer on the night of the injury.

The court concluded that Blissit used too much force when removing D.W. from his crib and found D.W. was physically abused. The court found for the parents and dismissed count II. A dispositional hearing was scheduled for July 26, 1988.

The DCFS report submitted for the dispositional hearing recommended that custody of D.W. be returned to respondent and that respondent and Blissit cooperate and complete a parenting class. The report also indicated that respondent and Blissit had visited D.W. regularly in foster care and were very loving and attentive toward him. In addition, the report indicated that respondent acknowledged the seriousness of D.W.'s injury and was anxious for his return to her custody. Respondent was pregnant with her second child at the time and Blissit is the father.

The report concluded that Blissit used poor judgment in the inci-

dent with D.W., which Blissit acknowledged and regretted. At the time, Blissit was raising two of his older children himself and no incidences were reported to DCFS regarding the care of these children.

The State's Attorney stated the DCFS recommendations for return of the child to the mother were "appropriate" and urged the court "to adopt them." The guardian *ad litem*, Blissit's counsel, and respondent's counsel agreed with DCFS and asked and urged the court to follow them.

The court found both parents unfit and removed D.W. to the custody of DCFS. The trial judge expressed concern about D.W.'s future and about respondent's attitude regarding the injury. He specifically referred to the fact that throughout the proceedings, respondent denied any alcohol was consumed by Blissit. The trial judge further stated that he was most concerned that a very experienced physician found this to be an exceptional injury. Respondent's counsel urged the court that respondent did not see any signs of intoxication on the night of the injury; she did not know how the injury occurred; but respondent agreed to take steps to ensure that D.W. would be protected from such incidents in the future.

Respondent urges the court's order is contrary to the evidence and contrary to the policies of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 *et seq.*), which seeks to preserve and strengthen a child's natural family ties whenever possible. Specifically, respondent points out that while she is uncertain as to what happened on the night D.W. was injured, this uncertainty does not rise to a level where the court could find her an unfit parent. Moreover, respondent urges there is no evidence to support a conclusion that she allowed D.W. to be physically injured by Blissit. Respondent also points out that she suggested to the court an order allowing only supervised visits with Blissit while she retained custody of D.W.

The State urges that the court was considering the best interests of D.W. when it concluded that returning custody of D.W. to either parent was not proper at the time of the dispositional hearing. The State also points out that respondent could regain full custody of D.W. after the court has the benefit of further reports from DCFS regarding respondent's participation in counselling classes.

■ We note that respondent does not raise any issues on the finding of physical abuse of D.W. by Blissit but rather focuses her argument on the court's finding that she is an unfit parent. On review, a finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. (*In re Hollis* (1985), 135 Ill. App. 3d 585, 482 N.E.2d 230.) A trial court's finding of unfitness should be

given great deference. *In re Brown* (1981), 86 Ill. 2d 147, 427 N.E.2d 84.

In the petition filed in this case, count I alleged physical abuse of D.W. by Blissit. It does not allege that the physical abuse was inflicted or caused by the respondent, nor was the respondent mentioned in count I. Nonetheless, after the second count alleging environmental abuse was dismissed, the court found the respondent unfit based upon the incident of physical abuse.

Section 802—27(1) provides in part:

"If the court finds that the parents *** of a minor adjudged a ward of the court are unfit ***, for some reason other than financial circumstances alone, *** and that appropriate services aimed at family preservation and family reunification have been unsuccessful in rectifying the conditions which have led to such a finding of unfitness ***, and that it is in the best interest of the minor to take him from the custody of his parents ***, the court may

\* \* \*

(d) commit him to the Department of Children and Family Services for care and service." Ill. Rev. Stat. 1987, ch. 37, par. 802—27(1).

■ The record here does not justify a finding of unfitness of respondent. Admittedly, it is not necessary when a petition alleges abuse that a specific allegation of unfitness need be made. As stated in *In re B.K.* (1984), 121 Ill. App. 3d 662, 664, 460 N.E.2d 43, 45:

"[W]aiver of an express allegation of unfitness in a petition may occur if that issue is injected into the proceedings by the parties and actually tried at the hearing."

At the dispositional hearing, no evidence was presented to the court. The court expressed concern that it did not know the mother's conclusions about what happened, it was concerned with the seriousness of the injury, and the failure of the mother to explain what happened insofar as she was concerned. The trial court also inferred that the respondent mother knew Blissit had been drinking when she left the minor in his care. The respondent mother did not testify and Blissit stated that she did not know he had been drinking. The court gave credence to its finding concerning the drinking when Blissit stated that respondent asked him if he had been drinking and he responded by smiling and not answering the question.

In the case before us, the prejudice to the respondent is clear. She had no notice that her fitness as a parent due to the physical abuse allegation was to be tried in these proceedings. Respondent and Blis-

sit were not married. The record shows they lived in separate apartments, albeit across the street from each other. The mother and father shared custody of the minor. The DCFS report recommends return of custody to the respondent and does not make any reference to the respondent's unfitness. As stated heretofore, the recommendations of the prosecutor, the guardian *ad litem*, the mother's attorney and the father's attorney recommended return of the child to the mother. Respondent mother had no notice or knowledge that her fitness was to be determined. The petition, count I, did not allege any involvement by her in the abuse and does not refer to her unfitness. Likewise, based upon the record, there was no waiver by the mother of the question concerning her fitness. Our review of the record in this case establishes that this issue was not before the court, the court's order finding respondent unfit is not supported by any evidence, and for all of the above reasons, the finding of unfitness of the mother is vacated.

For the foregoing reasons, we reverse the order finding respondent an unfit parent and remand this cause for further proceedings as to the custody of D.W.

Reversed.

LUND and GREEN, JJ., concur.