*In re* B.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. S.W., Respondent-Appellant).

Third District    No. 3—95—0891

Opinion filed August 8, 1996.

John Malvik, of Williams, Buckrop, Malvik & Associates, of Rock Island, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MICHELA delivered the opinion of the court:

The respondent, S.W., argues that the trial court erred in finding her to be an unfit parent. We affirm.

The record reflects that on May 11, 1993, the trial court found seven-month-old B.W. to be neglected because the respondent suffered from a mental disability. On February 9, 1995, the State filed a supplemental petition to terminate the respondent's parental rights. In its petition, the State alleged that the respondent was unfit because she: (1) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child (750 ILCS 50/1(D)(m) (West 1992)); (2) failed to make reasonable progress toward the return of the child within 12 months after an adjudication of neglect (750 ILCS 50/1(D)(m) (West 1992)); and (3) was unable to discharge her parental responsibilities due to mental illness and such illness would extend beyond a reasonable amount of time (750 ILCS 50/1(D)(p) (West 1992)).

At the unfitness hearing, Kelly Buckingham, the respondent's caseworker from January to October 1994, testified that the respondent's client service plan required her to attend mental health counseling, domestic violence classes, and parenting classes. The respondent was also required to visit B.W. for three hours twice a week. Buckingham said that the respondent refused transportation to parenting classes and did not successfully complete those classes. She also did not attend the required domestic violence classes. Further, the respondent's visitation with B.W. was sporadic. From January through September 1994, the respondent visited B.W. only 4 times, although at least 50 visits had been scheduled. During that time, the respondent lived in a trailer with a hole in the floor and animal feces on the floor. Buckingham testified that during a visit she observed a child trip over some glass on the floor and fall into the hole. Finally, Buckingham stated that during the time she was the respondent's caseworker, the respondent did not make reasonable progress toward the return of her son.

Barbara Herter testified that she was the respondent's caseworker from October 1994 to January 1995. The case plan in effect at that time required the respondent to attend a parenting group, find adequate housing, attend domestic violence counseling, follow her psychiatrist's recommendations, and attend counseling with Herter. Herter said that the respondent did not attend the required parenting classes. The respondent also lived in an efficiency apartment that was inadequate for a child. The respondent kept a dog in the apartment even though B.W. is asthmatic and the respondent had been told that she could not have pets in the apartment.

Herter further testified that the respondent attended three domestic violence counseling sessions but did not successfully complete that requirement. She attended only about 30% of the scheduled counseling classes with Herter. Further, of 23 possible scheduled visits with B.W., the respondent attended only 7. Herter also said that during those visits, the respondent concentrated on the toys or talking to Herter rather than interacting with B.W. When she failed to attend these sessions, she gave unacceptable excuses, such as that she had to go grocery shopping. Herter concluded that the respondent was either unable or unwilling to learn parenting skills involving judgment and thinking. Finally, she stated that the respondent had made no progress toward the return of B.W. during the time Herter was her caseworker.

Sheri Anderson testified that she was the respondent's caseworker after Herter. When she took over in February 1995, she did not know where the respondent was located. The caseworkers wrote letters to the respondent and her grandmother at their last known addresses, and the respondent eventually contacted Anderson in April 1995. Between April 1995 and August 1995, the respondent visited B.W. on only two occasions, even though she was allowed monthly visits.

Anderson further testified that the service plan required the respondent to perform the same duties as the other plans. The respondent, however, failed to perform these duties. She failed to secure permanent housing. She moved three times between April and August 1995. She did not attend domestic violence classes or parenting classes. At the time of the unfitness hearing, the respondent was pregnant and living with a man who was not her husband or the father of her unborn child. Anderson concluded that the respondent failed to make progress toward the return of B.W. during the time that Anderson was her caseworker.

Two psychiatrists also testified. Dr. Eric Ritterhoff testified that the respondent was a schizophrenic, bipolar type, who suffered from a borderline personality disorder. Ritterhoff had concerns about the respondent's ability to parent a child. Dr. Alice Harpering testified that she diagnosed the respondent as mildly retarded. Harpering said that the respondent was hyperactive and had learning defects, attention deficit disorder, a conduct disorder, and a personality disorder. Harpering testified that the respondent is unable to provide the necessary physical and emotional care needed by an infant and there is no possibility of improvement in the future. Finally, Harpering said that the respondent is extremely naive and is usually taken advantage of sexually and financially.

The respondent testified that she lived in East Moline with her

father and her current boyfriend. She admitted that she had not attended domestic violence classes for the past five months but said that she did not finish the course because her mother was ill. She also claimed that she missed numerous visits with B.W. because she was afraid the social workers would say something negative to her at the visits and that such comments depressed her.

The respondent further testified that during the time she did not have custody of B.W. she lived in California for six months. She called Illinois once to check on B.W. She admitted that she returned to Illinois because her mother was ill and not because she wanted to see B.W. Finally, she conceded that B.W.'s father and the father of her unborn child are both physically abusive.

On appeal, we initially note that the respondent has failed to contest the trial court's finding that she is unfit for failing to make reasonable efforts to correct the conditions which were the basis of B.W.'s removal. 750 ILCS 50/1(D)(m) (West 1992). Although this failure would allow us to affirm without considering the respondent's issues on appeal, we will overlook this error. Therefore, we shall review this case as if the respondent had appealed all three findings of unfitness.

The respondent first contends that the trial court erred in finding that she failed to make reasonable progress toward the return of her child within 12 months of the adjudication of neglect. 750 ILCS 50/ 1(D)(m) (West 1992).

■ The question of whether a parent has made reasonable progress toward the return of her child is determined on an objective basis. *In re L.L.S.*, 218 Ill. App. 3d 444, 577 N.E.2d 1375 (1991). Such progress is measured by the parent's compliance with the court's directives or the service plan. See *In re L.L.S.*, 218 Ill. App. 3d 444, 577 N.E.2d 1375 (1991). Finally, in order to reverse a trial court's finding that there was clear and convincing evidence of parental unfitness, a reviewing court has to conclude that this finding was against the manifest weight of the evidence. *In re Brown*, 86 Ill. 2d 147, 427 N.E.2d 84 (1981).

■ Here, ample evidence supported the trial court's finding that the respondent failed to make reasonable progress toward the return of B.W. All three of the respondent's caseworkers testified that she failed to meet almost every requirement of her service plan. She failed to complete domestic violence counseling sessions even though she admitted to having had abusive relationships with two men. She made almost no effort to see B.W. and only returned to Illinois because her mother was ill. Further, she lived in an environment unsuitable for a child and made no effort to obtain permanent, safe

housing. In sum, we find that the trial court's finding of unfitness on this ground was not against the manifest weight of the evidence.

■ The respondent next argues that the trial court erred in finding her unfit because she was mentally ill. 750 ILCS 50/1(D)(p) (West 1992).

A finding of parental unfitness on any one ground obviates the need to review other statutory grounds alleged by the State. *In re J.A.S.*, 255 Ill. App. 3d 822, 627 N.E.2d 770 (1994). Therefore, we find this contention to be moot. However, we note that from our review of the record, there was sufficient evidence to support the trial court's findings that the respondent was unfit because she was mentally ill (750 ILCS 50/1(D)(p) (West 1992)) and because she failed to make reasonable efforts to correct the conditions which were the basis for B.W.'s removal (750 ILCS 50/1(D)(m) (West 1992)).

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE, P.J., and McCUSKEY, J., concur.