NOTICE

Decision filed 04/20/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190491-U

NOS. 5-19-0491, 5-19-0492 cons.

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* H.E.R. and E.C.Z., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 17-JA-105, |
| | ) | 17-JA-106 |
| v. | ) | |
| | ) | |
| Juanita C., | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Welch and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err in finding the respondent to be an unfit parent pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2016)) where the respondent failed to make reasonable progress and efforts towards her service plan and the return of her children.

¶ 2    The respondent, Juanita C., appeals the October 22, 2019, orders of the circuit court of Madison County that terminated her parental rights with regard to her minor daughter and son, H.E.R. and E.C.Z. On appeal, the respondent contends that the trial court erred in

1

finding her to be an unfit parent pursuant to section 1(D) of the Adoption Act. 750 ILCS 50/1(D) (West 2016). For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The facts necessary to our disposition of this appeal follow. On June 12, 2017, the State filed, in the circuit court of Madison County, two petitions for adjudication of wardship as to the minor children, H.E.R., born April 19, 2009, and E.C.Z., born January 22, 2015.[1] The State's petition alleged that the minors were in the care of the Illinois Department of Children and Family Services (DCFS); both minors' fathers were deceased; the minors were not being adequately cared for in that the respondent had nodded off while in a vehicle in which the minors were passengers; the respondent suffers from substance abuse addiction which impairs her ability to care for the minors; the respondent admits to ongoing drug use despite engaging in treatment; and the respondent failed to make an appropriate care plan for her minor children as required under Illinois law. The same day of the filing of the petition the respondent tested positive for cannabis use.

¶ 5     On October 3, 2017, Thalia McCoy (McCoy), a caseworker from Hoyleton Youth and Family Services (HYFS), filed an adjudication and dispositional report with the trial court. The report stated that H.E.R. had phoned her grandmother at 10:15 p.m. on June 1, 2017, because she could not get the respondent to wake up. The incident occurred in a McDonald's restaurant parking lot. The respondent claimed she was only asleep for a few

---

[1]At the trial court level (17-JA-105 and 17-JA-106) and here on appeal (5-19-0491 and 5-19-0492), there were two separately filed cases at issue. The cases on appeal have been consolidated so that this court may jointly dispose of the matters since the same ultimate issue exists in both cases. The facts relevant to the analysis of both cases and the filings at the trial court level are essentially identical.

seconds while waiting for her landlord to arrive so she could pay rent. E.C.Z. was also inside the vehicle. The respondent was suspected to have used methamphetamine or cannabis prior to falling asleep. On June 5, 2017, drug testing revealed the presence of amphetamine/methamphetamine in the respondent's system. During a home visit on August 7, 2017, the respondent admitted to McCoy that she uses drugs recreationally, mainly cannabis. Following the respondent's initial failed drug test, two subsequent drug tests were scheduled; however, the respondent failed to appear for both. Following the respondent's intial evaluation, McCoy learned that the respondent was in the process of being evicted from her apartment for failure to pay rent.

¶ 6     Within the report, McCoy developed a service plan for the respondent that would allow the respondent to have the minors returned to her custody. The plan required the respondent to participate in mental health and substance abuse counseling, complete a parenting class, undergo random drug testing, obtain safe housing, and allow for a caseworker to perform monthly safety checks and supervised visitation with the children. That same day, the trial court adjudged H.E.R. and E.C.Z. neglected, made the minors wards of the court, and granted guardianship to DCFS. A permanency hearing was set for March 22, 2018.

¶ 7     On March 22, 2018, McCoy filed a permanency report. The report indicated that the respondent had failed to show satisfactory progress in all recommended services and plan requirements. The respondent had moved to Missouri following her eviction. She had not submitted any documents that proved she had participated in proper mental health or substance abuse counseling. While the respondent indicated she was participating in

3

treatment, she failed to produce any documentation or further proof. The respondent had not completed her parenting program, and she had only completed one drug test out of five that had been scheduled. The drug test, which was completed on January 22, 2018, was positive for cannabis and methamphetamine.

¶ 8    Although the respondent did participate in supervised visitation with the children, she missed several visits. Out of a total of 18 visits, the respondent appeared and participated in 10 vistis. The report noted that on February 15, 2018, McCoy met with the respondent and encouraged her to engage in the required services in order to be reunified with her children. At that time, the respondent indicated she planned to start services at Queen of Peace in Missouri, and McCoy set a deadline of February 22, 2018, for her to have appointments set up with a treatment provider. On the day of the deadline, the respondent left a voicemail with McCoy stating she needed to speak with her to make sure they were "on the same page." McCoy attempted to contact the respondent multiple times following the voicemail but was unable to reach her until March 7, 2018. During that phone call, a meeting was scheduled for just prior to the visitation the next day. The respondent failed to show for the meeting or the visitation.

¶ 9    On April 10, 2018, McCoy filed an updated permanency report. The report raised concerns about the respondent's mental health due to the traumatic losses of both fathers of her minor children, as well as the loss of her parents and a sibling. McCoy expressed concerns in the report that the respondent was in a continuous depressive state and used illegal substances to self-medicate. McCoy also noted that she was able to meet with the respondent on March 15, 2018, but only by suprising the respondent by meeting her at a

4

visitation with the children. The respondent did not learn that McCoy was going to be present until she was already en route to the visitation and stated she wanted to "jump out the car" upon learning the news. On that same date it was learned that the respondent was having difficulty getting treatment at Queen of Peace due to the facility not accepting Illinos Medicaid. The respondent also failed to appear for her March 30, 2018, child visitation, and she admitted to McCoy that she used methamphetamines and cannabis that weekend.

¶ 10    On September 13, 2018, McCoy filed another report with the trial court. That report indicated the respondent had moved back to Illinois and was living with a friend. She had completed a mental health assessment and had been participating in counseling services since June 2018. However, there was still no documentation of the respondent's completion of substance abuse counseling. On April 5, 2018, the respondent was drug tested, but the results came back "adulterated." On April 19, 2018, the respondent tested positive for cannabis. The respondent failed to appear for drug testing on May 31, 2018, and June 31, 2018.[2] On August 16, 2018, the respondent tested positive for cannabis and methamphetamine. At the time of the filing of the report, the respondent had partially completed her parenting classes. On August 5, 2018, the respondent failed to show for a meeting with McCoy. On August 22, 2018, the respondent failed to confirm a meeting,

---

[2]We note that because there are only 30 days in June, it was impossible for the respondent to comply with this request. We presume the intended date was June 30, 2018. The respondent has not contended that this error was prejudicial to her in any way, and we have no reason to believe that it was.

which resulted in a failed meeting. On September 5, 2018, the respondent appeared 30 minutes late to a scheduled meeting.

¶ 11    On January 29, 2019, McCoy filed an updated report. McCoy reported the respondent was still participating in mental health counseling, but she had not provided any proof of substance abuse counseling. The respondent failed to appear for drug testing on September 13, 2018, and October 25, 2018. She had another "adulterated" test on November 29, 2018. The respondent failed to complete her remaining parenting classes within the required time period. The respondent still lacked stable housing. The respondent claimed she was unable to obtain housing because a man reached into her car and stole her wallet that contained all of the money she had saved for housing.

¶ 12    On June 18, 2019, due to a lack of progress by the respondent on her service plan, DCFS filed a petition for termination of parent rights and for appointment of guardian with power to consent for adoption in the trial court. The petition alleged the respondent had:

> "failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any nine month period following the adjudication of neglect or abuse, specifically, October 3, 2017 through the date of the filing of [the] petition; [the respondent] has failed to make reasonable progress toward the return of the child to parent during any nine month period following the adjudication of neglect or abuse, specifically, October 3, 2017, through the date of the filing of this petition; [and the respondent] has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor."

¶ 13 Following supplemental discovery, DCFS filed an updated report on July 16, 2019. The report stated the respondent had not provided any documentation of any specific substance abuse counseling. The respondent failed to appear for drug testing on January 24, 2019, February 28, 2019, and May 24, 2019. On June 7, 2019, the respondent tested negative, but adulterated. On June 13, 2019, a test was scheduled, but the respondent appeared at the appointment too late for a test to be completed. The respondent did complete her parenting program on her third attempt. The respondent was now claiming to live in a mobile home in Illinois, but when asked for the address, she could not provide it.

¶ 14 DCFS filed an additional report on October 10, 2019. This report again revealed that the respondent had not sought any substance abuse treatment. Further, she had missed four drug tests scheduled in August and September of 2019. During McCoy's followup of the respondent's living situation, she learned that the respondent was actually rotating staying with friends in St. Charles, Missouri, and Alton, Illinois.

¶ 15 On October 22, 2019, a fitness hearing was held regarding the termination of the respondent's parental rights. McCoy was the first witness to testify at the hearing. McCoy testified that she had been the only caseworker for the entirety of the respondent's case. DCFS opened the case because of suspected neglect of the minors based on an allegation that the respondent fell asleep in a parked vehicle after using illicit drugs while her minor children were with her. Also, DCFS was aware of a previous incident where the respondent had locked herself downstairs in the basement while the minors were upstairs unsupervised. McCoy testified to the details of the initial service plan created for the respondent. She testified that the initial plan recommended that the respondent participate in mental health

and substance abuse counseling due to issues with dealing with the loss of loved ones and previous issues with substance abuse. The plan also recommended that the respondent undergo parenting classes, secure stable housing, and required her to participate in random drug testing. McCoy testified that the respondent did engage in mental health treatment at Centerstone in Alton, Illinois, although she was not the most consistent participant, being late and missing sessions on multiple occasions. However, the respondent did participate and engage when present and was still attending meetings at the time of the hearing.

¶ 16    McCoy testified that the service plan also required the respondent to attend substance abuse counseling at either Centerstone or Chestnut. The respondent never produced any proof of receiving such counseling. The respondent claimed she attended Narcotics Anonymous meetings, but never provided any proof. Regarding the respondent's parenting classes, the respondent failed to complete the classes in the allotted amount of time on her first two attempts. Finally, on her third attempt she did complete the program. McCoy testified that the respondent did not have stable housing as she was splitting time between friends' residences in Missouri and Illinois. The respondent was not compliant with drug testing and had missed the most recently scheduled test.

¶ 17    McCoy testified that overall the respondent's cooperation and compliance with her and the agency was "not good." The respondent spent the majority of the case avoiding McCoy, which led to her scheduling their meetings just prior to or after child visititation so that at least she had a chance to see the respondent and attempt to speak to her. McCoy claimed there was difficulty with staying in touch with the respondent because she did not have a reliable phone to reach her. McCoy then testified that the fathers of the minors were

8

deceased and no other individuals had come forward. The respondent "[f]or the most part" attended visitation with her children. McCoy clarified by stating that the respondent on several occasions failed to confirm visits, which was required for them to move forward due to her tendency to not show up or be late. However, she testified that during the visits the respondent interacted appropriately with her children and was attentive to both of them. The children were always happy to see the respondent. Ultimately, McCoy testified that she believed the respondent was unfit because she had not completed her service plan after two years, stating, "She's always had an excuse or an explanation as to why she hasn't completed her service."

¶ 18    On cross-examination, McCoy admitted she had only had approximately two hours of "face-to-face" contact with the respondent over the previous 10-month period. She testified that the minimal amount of contact was due to the respondent's phone issues, lack of responsiveness, and tardiness for meetings. While the respondent had not been discharged from her mental health services, McCoy admitted that a portion of the service plan would have been deemed met or satisfactory. She testified that the respondent was unsatisfactory on the substance abuse counseling portion of her plan because she was not seeking separate counseling for substance abuse as recommended. Instead, she was receiving some counseling for substance abuse as a portion of her mental health counseling. McCoy then testified that the respondent was not compliant with drug testing. Her last positive test was in August of 2018; however, she believed the respondent was still using because while the tests were coming back negative they were also "adulterated," which

indicated some type of masking agent was present in the sample which prevented them from being able to detect the presence of drugs.

¶ 19 The respondent testified next. The respondent testified that she believed she had made reasonable efforts towards completing her service plan. The respondent was engaged in mental health services, which was helping her work through some of the grief she was experiencing. The respondent also testified that she had some substance abuse assessments done at two providers, but they only recommended outpatient group sessions. The respondent then reached out to her mental health counselor at Centerstone, who recommended the respondent attend a group session counseled by the mental health counselor, where they addressed some substance abuse topics. The respondent stated that she was told by McCoy that the Centerstone session would be satisfactory to fufill the substance abuse counseling portion of her plan. The respondent further testified that she attended Narcotics Anonymous three times a week. The respondent testified that after her children were taken away, she went on a "downward spiral," was evicted from her apartment in Illinois, and felt like she needed to move to Missouri, where she had more of a support system. She testified that she had saved up money to move back to Illinois, but that the $2700 she had saved up was stolen from her while she was in a McDonald's parking lot. She had inquired into public-assisted housing, but nothing ever materialized. In regard to her drug tests, the respondent testified that she had not been going for her tests because she lacked transportation. The respondent indicated her car broke down, resulting in her having to rely on friends for rides. She indicated that she tried to use the bus, but it took four hours to go six stops and that the respondent was "not the best person with ***

10

time management." The respondent admitted to having difficulties with her cell phone because it is only a Wi-Fi enabled phone, meaning if Wi-Fi was not available, it did not function. The respondent testified that she felt like her lack of reliable transportation and phone usage impacted her ability to progress further with the service plan.

¶ 20 As to her visits with her children, the respondent testified that she loved her children and that she attempted to make the visits fun and use the opportunity to teach them. She believed everyone enjoyed the time they were able to spend together. She admitted to having substance abuse problems in the past and that she is presently addicted to cannabis, but she believes she is doing better with regulating her use of cannabis. She has been diagnosed with PTSD and uses the cannabis to self-medicate. She admitted she has been offered prescription medication for her anxiety and depression but has refused it because she does not "believe that is the solution." She denied ever having drugs in the house or using drugs in front of her children. She further denied ever abandoning, abusing, or neglecting her children and testified that she believes there was "no reason for a service plan, honestly. Like, there was no reason for a service plan to be initiated or in place."

¶ 21 Following the testimony, the trial court found that the respondent had been "doing good with mental health," but was somewhat inconsistent. The court noted the respondent had an issue with getting to places on time as evidenced by her being nearly an hour late to her fitness hearing that day. The trial court also found that after two years she still does not have stable housing and she had not completed a reliable drug test since August of 2018 because the respondent either failed to appear, appeared too late, or the test was "adulterated." Therefore, the trial court found that the State had proved its case by clear

11

and convincing evidence that the respondent was unfit to have custody of her minor children. The court then went on to the second step and held a hearing on the best interest portion of the termination of parental rights. We will not discuss those facts as no issue has been raised regarding that aspect of the trial court's ruling.

¶ 22 Following the hearing, the trial court entered formal orders terminating the respondent's parental rights. In the orders, the trial court found, based upon the testimony at the fitness hearing, the following:

> "[The respondent] has failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any nine month period following the adjudication of neglect or abuse ***; [the respondent] failed to make reasonable progress toward the return of the child to the parent during any nine month period following the adjudication of abuse or neglect ***; [and the respondent] failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor."

That same day, the trial court appointed counsel for the respondent for purposes of this appeal. The respondent filed a timely notice of appeal on November 21, 2019.

¶ 23                                    II. ANALYSIS

¶ 24 The respondent comes before this court challenging the propriety of the trial court's finding that the respondent is an unfit person within the meaning of section 1(D) of the Adoption Act. 750 ILCS 50/1(D) (West 2016). Termination of parental rights proceedings are governed by the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2018)). *In re*

*D.T.*, 212 Ill. 2d 347, 352 (2004). A petition to terminate parental rights is filed under section 2-29 of the Juvenile Court Act, which delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(2) (West 2018). First, the State has the duty to establish by clear and convincing evidence that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2016)). 705 ILCS 405/2-29(2), (4) (West 2018); *In re J.L.*, 236 Ill. 2d 329, 337 (2010). Once the State has demonstrated the parent is unfit by clear and convincing evidence and the trial court has found the parent unfit, the case proceeds to a second hearing, at which the State must prove that termination of parental rights is in the best interests of the child. 705 ILCS 405/2-29(2) (West 2018); *D.T.*, 212 Ill. 2d at 352. "Although section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be deemed 'unfit,' any one ground, properly proven, is sufficient to enter a finding of unfitness." *In re C.W.*, 199 Ill. 2d 198, 210 (2002).

¶ 25 Our courts have recognized that parental rights and responsibilities are of deep importance and should not be terminated lightly. *D.T.*, 212 Ill. 2d at 364. Thus, parental rights may be terminated only after a finding of unfitness that is supported by clear and convincing evidence. *Id.* A finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Id.* The trial court's finding of a parent to be unfit is given great deference because the trial court has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006).

13

"Determinations of the credibility of witnesses, the weight to be given their testimony, and reasonable inferences to be drawn therefrom are the responsibility of the trial court." *People v. Bell*, 294 Ill. App. 3d 951, 953 (1998) (citing *People v. Byron*, 164 Ill. 2d 279, 299 (1995)). This court, therefore, does not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Each case concerning parental fitness is unique and must be decided on the particular facts and circumstances presented. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005).

¶ 26     In this case, the trial court found that the State met its burden of proving each of the three grounds of unfitness it alleged it its petition to terminate the respondent's parental rights. Considering that we must affirm the trial court's decision if we find evidence to support any of the grounds upon which the trial court based its finding of unfitness (see *C.W.*, 199 Ill. 2d at 217), we first focus our analysis on the trial court's findings pursuant to section 1(D)(m)(ii) of the Adoption Act. 750 ILCS 50/1(D)(m)(ii) (West 2016). Therefore, if we determine that there is evidence to support the trial court's finding that the respondent failed to make reasonable progress toward the return of her minor children during any nine-month period following the adjudication of neglect, we must affirm the trial court. *Id.* After reviewing the record, we cannot say that an opposite conclusion is clearly apparent.

¶ 27     Section 1(D)(m)(ii) of the Adoption Act states, in part:

"If a service plan has been established as required under Section 8.2 of the Abused and Neglected Child Reporting Act to correct the conditions that were the basis for the removal of the child from the parent and if those services were available, then,

14

for purposes of this Act, 'failure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication under Section 2-3 or 2-4 of the Juvenile Court Act of 1987." *Id.*

Therefore, an examination of reasonable progress is an objective test when a service plan is in place. *In re B.W.*, 282 Ill. App. 3d 680, 683 (1996).

¶ 28    Here, the respondent's children were removed from her custody because of alleged instances of child neglect stemming from the respondent's use of illicit substances that rendered her incapacitated while her children were in her care. As a result of the proceedings, in October 2017, McCoy, the respondent's caseworker, created a service plan with the goal of addressing the respondent's drug abuse issues so that the children could be returned to her. The plan required mental health counseling, substance abuse counseling, drug testing, supervised child visitation, monthly meetings with her caseworker, parenting classes, and, following her eviction, obtaining stable housing.

¶ 29    The respondent, during the entire two-year period following the creation of her service plan until the termination of her parental rights, never successfully passed a drug test. She tested positive for, or admitted to, the use of methamphetamines and cannabis on at least three occasions in 2018, with the last known failed drug test being on August 16, 2018. Following that failed test, the respondent failed to appear for nine scheduled drug tests, had two drug tests return "adulterated" indicating the use of a masking agent in her system, and failed to complete another drug test because she arrived too late for testing.

15

The respondent was never compliant with drug testing during the entirety of her service plan. Further, the respondent testified at her fitness hearing that cannabis "is an addiction of mine" and that she was working on ways of "self-regulating other than substance-abusing." The respondent failed to ever secure stable housing following her eviction from her apartment. Following an initial nine-month delay, the respondent finally began receiving mental health counseling in June 2018, and while inconsistent, continued counseling through the date of the fitness hearing. The respondent failed to provide any documentation or proof that she received any substance abuse counseling as required under the service plan. The respondent did pass her parenting class on her third attempt. The respondent had difficulty attending or confirming meetings and supervised visitations, but participated when she was able to attend them. At the fitness hearing, McCoy testified that the respondent was unfit because "she has not completed her services on her plan after two years of trying to get her to do so. She's always had an excuse or an explanation as to why she hasn't completed her service." The respondent, however, testified at her fitness hearing that she considered herself to be a fit parent. When asked why she considered herself a fit parent, she denied ever abandoning, abusing, or neglecting her children and went on to testify that she believed there was "no reason for a service plan, honestly. Like there was no reason for a service plan to be initiated or in place."

¶ 30    The respondent's failure to satisfactorily complete drug testing and substance abuse counseling, coupled with her testimony in which she admitted to still being addicted to illegal substances, denied her drug use was an issue, or that a service plan was necessary

16

to help her overcome her issues, is evidence of a failure to make reasonable progress to correct the conditions that were the basis for the removal of her children.

¶ 31 The respondent, however, contends that this court should consider inconsistencies between her testimony and the testimony of the State's witness, as well as activity the respondent claims to have taken outside of her service plan as evidence of progress towards her goal. Specifically, she claims that she attends Narcotics Anonymous three times a week for substance abuse counseling. The respondent relies on *In re F.S.*, 322 Ill. App. 3d 486 (2001), in support of her contentions. In *In re F.S.*, a trial court found a parent to be unfit where the the State presented evidence that the parent failed to complete certain aspects of her service plan. *In re F.S.*, 322 Ill. App. 3d at 498. The appellate court overturned the trial court's decision because trial court had refused to consider treatment that the parent received, and which successfully kept her off drugs for several months, because the treatment program which she underwent was not staffed by professionals and was not approved by DCFS. *Id.*

¶ 32 We find *In re F.S.* to be distinguishable from the matter at hand. In *In re F.S.*, the individual had proof that she received treatment, as well as proof that the treatment was successful and that she was drug-free as demonstrated by negative drug tests. The issue in *In re F.S.* was whether progress made through an "unapproved" treatment could be considered by a trial court. *Id*. However, in this matter, we have no evidence of the respondent receiving any treatment outside of the service plan. The respondent failed to submit to the court any documentation or other evidence, outside of her own statements, that demonstrates she has received any outside treatments or counseling. The respondent's

17

testimony that she has been attending meetings at Narcotics Anonymous three times a week has not been substantiated, especially in light of her failure to comply with drug testing, which leaves us with no proof that she has ever had a period where she was drug-free. In fact, the respondent instead supplies this court with evidence of the opposite by testifiying that she was still using cannabis to self-medicate up to the date of her fitness hearing.

¶ 33    Ultimately, the respondent is not asking this court to consider evidence the trial court refused to consider or overlooked; instead, the respondent is asking us to reconsider and reweigh the evidence and testimony presented to the trial court and reach a different conclusion. However, as previously stated, "[d]eterminations of the credibility of witnesses, the weight to be given their testimony, and reasonable inferences to be drawn therefrom are the responsibility of the trial court." *Bell*, 294 Ill. App. 3d at 953 (citing *Byron*, 164 Ill. 2d at 299). As a result, this court does not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d at 391. Therefore, because the opposite conclusion is not clearly apparent based upon evidence presented before the trial court, and the respondent does not raise the issue of the trial court's findings with regard to the best interests of H.E.R. and E.C.Z., we affirm the trial court's orders terminating the respondent's parental rights to her minor children.

¶ 34                                    CONCLUSION

¶ 35    For the foregoing reasons, the trial court's October 22, 2019, orders terminating the respondent's parental rights as to her minor children, H.E.R. and E.C.Z., are affirmed.


¶ 36    Affirmed.