(No. 54026.—

*In re* DANIELLE BROWN, a Minor (The People of the State of Illinois,- Appellant, v. John Brown, Appellee).

*Opinion filed September 30, 1981.*

148

Tyrone C. Fahner, Attorney General, of Springfield, and Thomas J. Fahey, State's Attorney, of Danville (Melbourne A. Noel, Jr., Thomas E. Holum, and Jack Donatelli, Assistant Attorneys General, of Chicago, and Robert J. Biderman and Karen L. Boyaris, of the State's Attorneys

Appellate Service Commission, of Springfield, of counsel), for the People.

Michael J. O'Brien, of Danville, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The circuit court of Vermilion County found Danielle Brown, a minor, to be neglected, found her natural parents unfit, terminated their parental rights, declared Danielle a ward of the court, and placed her in the guardianship of the Department of Children and Family Services (DCFS) with authority to consent to adoption. The appellate court affirmed the adjudication of neglect, the finding of unfitness of Danielle's mother, the declaration of wardship, and the guardianship of the DCFS. It reversed the finding of unfitness of Danielle's natural father, John Brown, and vacated the guardian's authority to consent to adoption. 87 Ill. App. 3d 1074.

Danielle is the natural child of Melanie Brown Glidewell and John Brown, respondent, whose divorce became final on November 17, 1976. The decree of divorce granted custody of Danielle to the mother; the father was given visitation privileges and ordered to pay child support. On November 19, 1977, Melanie married Robert Glidewell, with whom she had previously lived on and off for over a year. Glidewell was subsequently convicted and sentenced for the murder of Danielle's three-year-old sister. On March 30, 1978, one day after the homicide, the State filed a juvenile petition in the circuit court alleging that Danielle was neglected and that her environment was injurious to her welfare. The circuit court ordered that Danielle be placed in the temporary custody and guardianship of the DCFS. At this time, Danielle was 28 months old.

On January 5, 1979, the State filed an amended petition requesting, *inter alia,* that the natural parents be declared

unfit and that Danielle be placed in the custody and guardianship of the DCFS with authority to consent to adoption. A hearing was held during which 16 witnesses testified for the State and several photographs were introduced into evidence. At the conclusion of the hearing, the trial court entered the order as previously related.

The State appeals only that portion of the appellate court judgment reversing the trial court's finding as to the natural father's unfitness. The allegations of unfitness were made under sections 1(D)(b) and (g) of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, pars. 1501(D)(b) and (g)), which provide:

> " 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:
>
> (b) Failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare;
>
>       * * *
>
> (g) Failure to protect the child from conditions within his environment injurious to the child's welfare."

Several appellate court cases have involved determinations of unfitness under the above provisions. Some cases have found a lack of contact between the natural parent and children to constitute unfitness under subsection (b). (*In re Hillyer* (1980), 82 Ill. App. 3d 505; *Freeman v. Settle* (1979), 75 Ill. App. 3d 799.) Other cases have found a natural parent not to be unfit under the same subsection notwithstanding an apparent lack of contact between the natural parent and the child. In such cases, the appellate court, based on the unique factual context, determined that the evidence of unfitness was not clear and convincing. (*Blakey v. Blakey* (1979), 72 Ill. App. 3d 946; *In re Hurley* (1976), 44 Ill. App. 3d 260; *Peyla v. Martin* (1976), 40 Ill. App. 3d 373; *In re Gibson* (1975), 24 Ill. App. 3d 981; *In re Overton* (1974), 21

Ill. App. 3d 1014.) In none of these latter cases, however, was there any question as to the child's health or safety.

Appellate court cases have been consistent in finding a parent unfit under subsections (b) or (g) when the child's health or safety is in question. *In re Dixon* (1980), 81 Ill. App. 3d 493; *In re Nitz* (1979), 76 Ill. App. 3d 15; *In re Tolbert* (1978), 62 Ill. App. 3d 927; *In re Love* (1977), 50 Ill. App. 3d 1018.

In the instant case, the record shows that Danielle lived with respondent's stepmother for prolonged periods between April 1976 and August 1977. Respondent also lived with his stepmother much of the time in that period. During this time, respondent had contact with Danielle but accepted virtually no responsibility for her care or support. The record is replete with evidence showing that, from the summer of 1976 to the summer of 1977, it was readily apparent Danielle had been seriously abused when she returned from stays at her mother and stepfather's residence. Many witnesses reported that on several occasions they had seen bruises and marks on Danielle. Burns were also observed on her body on several occasions. Two witnesses testified that respondent himself had seen burns on Danielle's body. Yet, respondent did nothing to alleviate his daughter's mistreatment. On one occasion respondent observed what were characterized as cigarette burns on Danielle's fingertips and another time he observed burns behind her ears and on her back. The evidence indicated the ear and back burns were inflicted by Robert Glidewell with a fork that had been dipped in hot grease. Respondent points out that he reported this to the DCFS. However, one month elapsed before he reported the burns. Moreover, one week later, he phoned the DCFS and told them to disregard the complaint because he was trying to reconcile with Danielle's mother. It is important to note that part of the complaint which respondent told the DCFS to disregard consisted of respondent's statement that Danielle had been

beaten in the past by Glidewell, thereby demonstrating his awareness of his daughter's prior abuse. The record also shows that often, upon return from her mother's residence, Danielle would experience nightmares accompanied by hysterical screaming. It is apparent from the record that Danielle was suffering emotionally as well as physically.

In August 1977 Danielle was taken home, where she stayed with Glidewell and her mother from September 1977 until the death of Danielle's sister in March 1978. The record indicates that during this period Danielle continued to be abused. Two examining physicians testified that when she was brought to the hospital by police on March 29, 1978, she had between 20 to 30 bruises covering almost her entire body. Their determination was that the bruises were from two days to several weeks old and that they had been inflicted, rather than accidental. The photographs in evidence demonstrate the severity of the bruises. The record fails to reveal, however, that respondent, knowing the abuse Danielle suffered on prior occasions when she stayed with her mother and stepfather, took any action whatsoever during this seven-month period to protect his daughter.

The unfitness of a parent must be proved by clear and convincing evidence. (*In re Dixon* (1980), 81 Ill. App. 3d 493; *In re Hrusosky* (1976), 39 Ill. App. 3d 954.) We agree with the appellate court cases holding that a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. (*In re Dixon* (1980), 81 Ill. App. 3d 493, 502; *In re Bennett* (1980), 80 Ill. App. 3d 207, 210; *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 801; *Blakey v. Blakey* (1979), 72 Ill. App. 3d 946, 947.) The rationale underlying this standard is that the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court. Accordingly, the trial court's findings should be given great deference. See *In re Stilley* (1977), 66 Ill. 2d 515, 520.

In the instant case, the appellate court held that the

evidence did not sustain a finding of unfitness as to the respondent; whereas, the trial court found not only that Danielle was severely abused, but also that the abuse was so extensive that anyone closely attendant to the child would have been aware of it. Our review of the record affirms the trial court's conclusions. The record reveals that respondent had extensive opportunities to observe the signs of his daughter's abuse, yet took no action to remedy her situation. Respondent defends his inaction on the basis of financial inability to obtain legal custody and his alleged fear of reprisal from Glidewell. We believe these excuses hardly suffice as reasons to allow his daughter to suffer severe and incessant harm. Even with the knowledge of Danielle's continued abused condition, respondent failed to take any affirmative action to effect a change in her living environment or to shield her from additional mistreatment.

Respondent's conduct clearly and convincingly demonstrates a failure to protect Danielle from conditions in her environment that were injurious to her welfare, thereby demonstrating his unfitness as defined by section 1(D)(g) of the Adoption Act. We hold the trial court's order finding John Brown to be an unfit parent under that section was not contrary to the manifest weight of the evidence. Consequently, that part of the appellate court's judgment reversing the trial court's order as to the fitness of John Brown is reversed, as is that portion of its judgment vacating the guardian's authority to consent to adoption. The judgment of the circuit court of Vermilion County is affirmed, and the cause is remanded to that court for further proceedings.

*Appellate court reversed*
*in part; circuit court*
*affirmed; cause*
*remanded.*