*In re* KEYONNA LANE MILLER *et al.* (The People of the State of Illinois, Petitioner-Appellee, v. Evelyn Faye Miller, Respondent-Appellant).

Fourth District   No. 4—86—0398

Opinion filed May 5, 1988.

358

Larry R. Silkwood, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

The circuit court of Champaign County entered an order on June 6, 1986, terminating the parental rights of respondent Evelyn Miller to her two children, K.L.M. and T.M.M., pursuant to section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)). The order also terminated the parental rights of T.M.M.'s father. Respondent appeals. We affirm.

Respondent's two children are the result of her union with two men. In October 1982, a petition was filed alleging that both minors were neglected. At that time, K.L.M. was 3 years old, and T.M.M. was 15 months old. Neither of the fathers lived with respondent, and she had no knowledge of their whereabouts. The petition alleged respondent was not providing the necessary medical care for the minors. A shelter-care hearing was held, and the court ordered the children removed from respondent's custody. Both children were malnourished. They were in the lower fifth percentile for weight and height growth. Both children had chronic problems with ear infections. In T.M.M.'s case, surgery was recommended. Respondent was not keeping medical appointments for the children, and she was not giving the children the medicine they required on an ongoing basis. Respondent also failed to keep her appointments with social workers who were counseling her. In addition, the children were found to have significant developmental delays. The elder child, K.L.M., was extremely fearful and found to have a vocabulary of about 10 to 12 words.

Respondent stipulated to the allegations in the petition at the adjudicatory hearing. The dispositional order was entered on January 11, 1983. It ordered that the guardianship administrator of the Illinois Department of Children and Family Services (DCFS) be made permanent guardian of the minors and that the administrator be given authority to place the minors. The order also required respondent to cooperate with DCFS in several areas: (1) visitation with her children; (2) medical care and any counseling or therapy required by the children; and (3) appointments for respondent with social workers, homemakers, and financial counselors. In addition, respondent was to attend certain classes, including parenting, finance, and budgeting classes. Finally, respondent was ordered to make reasonable efforts to obtain her GED, or obtain full-time employment, or receive vocational training in order to obtain employment.

Six review hearings were held between March 30, 1983, and April 23, 1985. Neither father participated to any great extent in the affairs of the minors. The parental rights of K.L.M.'s father were terminated in July 1983. In June 1986, the parental rights of T.M.M.'s father were terminated at the same time as respondent's. However, only respondent appeals the order of termination.

The supplemental petition requesting termination of respondent's parental rights was filed on January 7, 1986. Following two days of hearing, the court entered an order in which it found respondent to be an unfit mother on two grounds. Respondent had failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children from her custody within 12 months after the adjudication of neglect. (See Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).) She had also failed to make reasonable progress toward the return of her children to her care within 12 months following the adjudication of neglect. (See Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).) The dispositional order terminating respondent's parental rights was entered on June 6, 1986.

This is the second time we have been called on to decide this appeal. Respondent initially advanced two arguments (1) the trial court's orders were voidable as to her because the trial court lacked personal jurisdiction over the minors; and (2) the trial court's findings of unfitness were against the manifest weight of the evidence. We initially held that respondent was correct on her first argument based on our ruling in *In re Pronger* (1986), 148 Ill. App. 3d 311, 499 N.E.2d 155, and reversed the trial court. (*In re Miller* (1987), 154 Ill. App. 3d 1163 (order under Supreme Court Rule 23).) Subsequently, *Pronger* was reversed by the supreme court. (*In re Pronger* (1987), 118 Ill. 2d

512, 517 N.E.2d 1076.) Relying on its decision in *Pronger*, the supreme court vacated our order in this cause and remanded the matter for further consideration. (*In re Miller* (1988), 118 Ill. 2d 544, (supervisory order).) On remand to our court, therefore, we need consider respondent's remaining allegation of error.

Respondent argues the trial court's findings of unfitness were against the manifest weight of the evidence. Respondent points to the original petition's allegations that the minors were not receiving proper medical care. Following the removal of the children from respondent's care, the children did receive proper medical attention, and their problems were corrected. Yet, in order for respondent to regain custody of the children, respondent argues the court imposed conditions generally unrelated to medical care. Respondent contends the conditions imposed upon her were not rationally related to the original medical problems, and, therefore, were not related to her fitness as a parent. Respondent does not contest the facts as testified by the social workers. Rather, respondent simply contends the court's conclusions were wrong. We disagree with respondent's assessment.

■■ The unfitness of a parent must be proved by clear and convincing evidence. (*In re Brown* (1981), 86 Ill. 2d 147, 152, 427 N.E.2d 84, 87.) A finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. (*Brown*, 86 Ill. 2d at 152, 427 N.E.2d at 87.) Once there is clear and convincing evidence of the unfitness of the natural parent, the natural right of the parent must yield to the best interest of the child. (*In re Dalton* (1981), 98 Ill. App. 3d 902, 913, 424 N.E.2d 1226, 1233.) Based on the evidence in the record, it is abundantly clear that the trial court was within its discretion in ordering the termination of respondent's parental rights.

■■ Following the removal of the minors from respondent's custody, respondent was ordered to cooperate with DCFS and the other agencies involved. She was ordered to participate in activities pertaining to the minors: visitation with the minors, and participation in the medical care and developmental therapy required by the minors. She was also ordered to engage in activities aimed at improving her abilities as a parent: receive counseling from the Champaign County Mental Health Center; attend parenting, finance, and budget classes; establish an appropriate residence for herself and the minors; and obtain full-time employment or proceed with her education with the goal of obtaining employment. At the hearing for the petition to terminate, six social workers testified to their involvement with respondent and the minors. Their testimony can be summarized as follows. Each one participated with respondent in the establishment of goals

designed to implement the court's order. Each worker testified to respondent's failure to accomplish the goals because she did not exert the effort necessary to accomplish the tasks. She simply could not or would not put any effort into improving herself or the environment in which her children were to live.

Efforts were made to assist respondent with even the simplest tasks. Any problem respondent mentioned as interfering with her responsibilities was addressed. Respondent mentioned transportation difficulties. Meetings were arranged at convenient locations, or bus tokens were offered, or the social workers drove respondent themselves. Yet, respondent failed to follow through. Respondent discussed her depression and her feelings that the tasks given to her seemed overwhelming. At one point, in mid-1984, respondent was diagnosed as mildly retarded, suffering from depression, and possibly suffering from simple schizophrenia. The social workers carefully addressed these concerns. Efforts were made to positively reenforce respondent's achievements, no matter how small. Apparently, these efforts were successful. In November 1984, respondent underwent a further psychological evaluation. No evidence was found of depression. The examiner noted respondent no longer considered herself depressed. She had a fairly active social life with her boyfriend. Yet, her children failed to reap any benefits from respondent's improved self-esteem. As the trial court stated:

> "She has steadfastly refused to undertake nutritional planning, has failed to attend [T.M.M.'s] school on Mondays as repeatedly suggested, has made no meaningful effort to attend parenting classes, has missed the children's medical appointments, resisted and refused vocational and educational assistance and made no real attempt to obtain housing. The sad truth is that whatever interest or concern she may have displayed for her children, she has made no effort, reasonable or otherwise, to correct the conditions which were the basis for the removal of the children from her custody.
>
>     \*\*\*
>
> \*\*\* [S]he simply made no effort in 3 years despite truly herculean efforts by the social service agencies involved."

While the initial basis for removing the children was their neglected medical condition, the overarching problem, which is apparent from the evidence, is respondent's total inability to function as a parent. The trial court was merely addressing the actual problem in requiring respondent to address other concerns than the children's medical problems. Respondent's failure to attend to her children's medical

problems was simply a manifestation of respondent's total inability to parent her children. The evidence is clear and convincing that respondent failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children. Similarly, the record sustains the court's finding that respondent failed to make reasonable progress toward returning the children to her care.

The evidence did not indicate the children were intentionally mistreated in any way. Rather, respondent's great wrong to her children was her failure to act responsibly as a parent; her almost apathetic attitude toward life, and, in particular, her children. The court correctly determined that respondent could not or would not conform to the reasonable responsibilities imposed by court order within a reasonable time. Termination of her parental rights was proper.

For the foregoing reasons, the order of the circuit court of Champaign County terminating respondent's parental rights is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.