*In re* N.H. *et al.* (The People of the State of Illinois, Petitioner-Appellee, v. Charles Adams, Respondent-Appellant).

Fourth District No. 4—88—0169

———

Opinion filed October 6, 1988.

Diana Lenik, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On January 28, 1988, the circuit court of Champaign County found defendant Charles Adams to be an unfit parent because of his failure to maintain a reasonable degree of interest, concern, or responsibility for the minors N.H., S.A., N.A., and T.A. On February 23, 1988, the same court reaffirmed the finding of unfitness and further found that it was to the best interest of the minors that defendant's parental rights be terminated, terminated the parental rights, and appointed the guardianship administrator of the Department of Children and Family Services (DCFS) guardian, with the power to consent to the adoption of the minors. Defendant appeals, contending the finding of unfitness and subsequent termination of parental rights was against the manifest weight of the evidence. We affirm.

Defendant and Eva Harris are the natural parents of N.H., a male child born July 9, 1976; S.A., a female child born September 11, 1979; N.A., a female child born July 18, 1982; and T.A., a female child born September 28, 1984. An order for temporary custody was entered on August 13, 1985, placing the four children under the control of the guardian administrator of DCFS. At the time of the temporary order,

the children were living in Champaign County with their mother, the father being located somewhere in Chicago. A neglect finding was entered on August 27, 1985. Review hearings were held on October 3, 1985, December 17, 1985, April 29, 1986, June 26, 1986, November 24, 1986, and August 18, 1987. The defendant did not appear at the hearings until August 1987. He did not have contact with the children from at least August 1985 until the August 18, 1987, hearing. According to his testimony, he returned to Champaign County approximately 7½ months prior to August 18, 1987, together with his "fiancee" and her young child. He made contact with DCFS shortly before the August 18 hearing and requested visitation.

On August 18, 1987, the court appointed counsel for defendant and set December 3, 1987, as the next review hearing date. DCFS arranged for weekly supervised visitation for defendant with the children beginning in October 1987. He attended the visitation four times in October and two times in November, missing two visitations in November and missing all visitations in December 1987 and in January and February 1988. Defendant cited difficulties in travel from his residence in a trailer park on Highway 45 north of Urbana as the cause for his failure to make the arranged visitations. His residence location required a 45-minute walk to the DCFS place of visitation.

On December 3, 1987, a petition to find the parents unfit was filed, and the fitness hearing was set for January 28, 1988. On January 28, 1988, the mother surrendered her rights to the four children. After a hearing, the defendant was found unfit based on the testimony of DCFS caseworkers. Defendant did not testify at the January 28, 1988, hearing.

Defendant did testify during the February 23, 1988, hearing, stating that he missed visitations in November and December 1987 and in January and February 1988 because of bad weather and an inoperable automobile. He gave contradicted testimony relating to his notification of DCFS about his visitation problems. A DCFS employee testified defendant had stated that he did not keep contact with the children while he was in Chicago because he "ha[d] problems of [his] own." Defendant denied making this statement and testified as follows:

"THE WITNESS: I had said to Karen that while I was in Chicago, that things were not easy going due to all the death in my family and the separation of my kids. In this alcoholic summary report too, it says the same thing. That's the same thing I told Karen, the same thing I told them. I didn't tell them that I have problems in Chicago of my own. I told Karen that it was

not easy, and the phrase [sic] that I was going through with all the death in my family and the separation of my kids, that it was not easy in Chicago. I didn't say nothing about problems of my own. I been dealing with problems all of my life."

Section 4—27(2) of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 804—27(2)) (formerly section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9)), which became effective January 1, 1988, provides for appointment of a guardian with the authority to consent to the adoption of a minor based upon a finding as to the best interests of the minor. In such cases, where a nonconsenting parent is involved, there must be a "finding, based upon clear and convincing evidence, that [the] non-consenting parent is an unfit person," as defined by section 1 of the Adoption Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 1501). Section 1(D)(b) of the Act lists as justification for a finding of unfitness to be:

"(b) [F]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(b).)

The trial court's determination of unfitness was based upon this subsection, and the trial court specifically recognized the clear and convincing requirement.

Our supreme court has recognized that parental rights and responsibilities are of deep human importance and will not be lightly terminated (In re Paul (1984), 101 Ill. 2d 345, 351-52, 461 N.E.2d 983, 985), and that a finding of parental fitness must be supported by clear and convincing evidence (In re Brown (1981), 86 Ill. 2d 147, 152, 427 N.E.2d 84, 87; Paul, 101 Ill. 2d at 352, 461 N.E.2d at 986).

In Paul, one ground for finding unfitness on the part of the mother related to her missing 8 visitations out of 31 possible opportunities. Termination under section 1(D)(b) of the Act was found to be error. The conduct to be considered by the court should not be isolated to a narrow period of time but should encompass the entire period of time in question. (Adams v. Adams (1982), 103 Ill. App. 3d 126, 132, 430 N.E.2d 744, 748.) The trial court's comments in the present case indicated that it considered the period of time from August 1985 to the date of the hearing terminating rights. The lack of interest, evidenced by defendant's failure to attempt contact with the children between August 1985 and August 1987, was an important consideration. The subsequent failure to make visitations, when arranged by DCFS, further added to the evidence establishing the failure to maintain a reasonable degree of interest. Visitation was afforded even after the filing and the serving on defendant of the petition to termi-

nate parental rights. Even in face of the danger indicated by the petition to terminate, defendant could not find it possible to walk for 45 minutes to see his children. The facts in the present case are far different from those in *Paul*. There is no indication that defendant was disabled. There was only indication that he did not care enough. The entirety of the evidence sustains the trial court's determination.

Affirmed.

KNECHT and SPITZ, JJ., concur.