NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250988-U

NO. 4-25-0988

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 29, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 23JA123 |
| v. | ) | |
| Cassandra M., | ) | Honorable |
| Respondent-Appellant). | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court granted counsel's motion to withdraw and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2      In January 2025, the State filed a petition to terminate the parental rights of respondent, Cassandra M., as to her minor child, S.H. (born in 2021). In September 2025, the trial court terminated respondent's parental rights. Respondent appealed, and this court appointed counsel to represent her. Counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing respondent's appeal presents no potentially meritorious issues for review. This court gave respondent the opportunity to respond to the motion, and respondent did not file a response.

¶ 3      We grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5            On July 14, 2023, the State filed a petition in the circuit court of Peoria County on behalf of S.H., a minor born in November 2021, alleging that he was neglected pursuant to section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2022)). The petition alleged in count I that S.H. was neglected because an umbilical cord sample taken on the date of his birth had tested positive for cocaine, a controlled substance as defined in section 102(f) of the Illinois Controlled Substances Act (720 ILCS 570/102(f) (West 2022)). Count II alleged S.H. was neglected because his environment was injurious to his welfare. The trial court found that there was probable cause to believe the allegations and ordered that the minor be placed in the temporary custody of the Illinois Department of Children and Family Services (DCFS) on July 14, 2023.

¶ 6            At a hearing on October 16, 2023, respondent stipulated to count II, admitting to using cocaine and marijuana while the minor was under her care. The trial court accepted the stipulation and found that S.H. had been neglected. The court subsequently held a dispositional hearing on October 30, 2023, finding respondent unfit, making S.H. a ward of the court, and ordering that DCFS be named guardian.

¶ 7            On January 22, 2025, the State filed a petition for termination of parental rights, alleging that respondent was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)). The petition specifically alleged that respondent had failed to make reasonable progress toward the return of S.H. to her care during the nine-month period from January 22, 2024, to October 22, 2024, and prayed for an order finding it to be in the best interest of S.H. to permanently terminate respondent's parental rights. Respondent orally denied the allegation.

¶ 8                              A. Fitness Hearing

¶ 9          A fitness hearing was held on September 2, 2025. Before the hearing began, respondent asked to amend her answer to stipulate to the allegation of unfitness. The trial court admonished respondent that if she stipulated, there would not be a trial as to her fitness and the State would not have to prove by clear and convincing evidence that she did not make reasonable progress toward the return of the minor to her care during the relevant period. Respondent stated that she understood and confirmed that she would like to stipulate to the unfitness issue. She denied being forced or coerced in any way and confirmed that she made this decision after conversing with her attorney. The court accepted respondent's amended answer.

¶ 10          As a factual basis, the State proffered that testimony would establish that respondent was ordered to participate in a substance abuse assessment, drug testing four times per month, counseling, and a domestic violence course. It would also establish that respondent did not engage in counseling or complete a domestic violence course, she was not consistent with drug testing, and during that time, she did not obtain stable housing and employment. Respondent did not object to the State's proffer. The trial court found that respondent was unfit, finding that respondent's stipulation was adequately proven by the State's proffer and exhibits, and she failed to make reasonable progress toward the return of S.H. to her care during the nine-month period.

¶ 11                              B. Best-Interest Hearing

¶ 12          Immediately following the fitness hearing, the trial court proceeded with a best-interest hearing. Melanie Brennan, the DCFS caseworker who was assigned to S.H.'s case in December 2024, testified that respondent was living in an assisted living home that helped clients with sober living and domestic violence. She testified that respondent had been doing

- 3 -

well and they were helping her look for a home of her own. According to Brennan, respondent had also brought items to the last several visits with S.H., such as school supplies, snacks, and toys.

¶ 13 Brennan testified that she visited S.H. in his foster home approximately three times a month and S.H.'s physical needs were being met by his current foster parent. He had a good bond with the current foster parent, referred to the foster parent as grandma or granny, and consistently displayed affection for the foster parent. She further stated that S.H. was suspected of having autism and he had "head banging behaviors." She asserted the foster parent handled his episodes very well and the foster parent was licensed to handle a child with special needs. Brennan also stated that S.H. had a good relationship with the other five children in the foster home, he identified the foster home as his home, and the foster parent's extended family members treated S.H. like family. Brennan continued that the foster parent was willing to keep the bond with the biological parents if she adopted S.H. Brennan stated that she believed it to be in S.H.'s best interest to have the current foster parent adopt him.

¶ 14 Respondent testified that she had been working a part-time job since April 2025. She stated that she was receiving assistance to maintain or establish independent housing that would be safe and appropriate for S.H. Respondent also stated that she had made a lasting change in her life, had been sober for seven months, and recognized that sobriety would be an ongoing battle. According to respondent, she was able to soothe and calm S.H. when he had problems, and she was willing to learn from medical professionals to help care for him. Later, respondent acknowledged that she did not have a plan in place in the event that she relapsed in her substance abuse.

¶ 15 After reviewing the evidence, the trial court found that the State had "proven by a

preponderance of the evidence that the best interest of [S.H.] would be served by terminating the parental rights of [respondent]." In explaining its decision, the court discussed nine of the best-interest factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)).

¶ 16　　The trial court explained that the S.H.'s physical safety and welfare, his need for permanence, continuity of affection, and the preferences of those available to care for the S.H. weighed in favor of termination. It also concluded that the development of S.H.'s identity and the risk of substitute care weighed against termination. It further discussed S.H.'s wishes, community ties, and background, finding them to be neutral factors.

¶ 17　　The trial court concluded that "the clear preponderance of the factors weigh in favor of [S.H.]'s permanency being with the foster parent." The court noted that while respondent had made some changes for the better, it did not see any time in the near future when she would be able to provide for the schooling, education, safety, and medical needs of the minor to the same extent as the foster parent.

¶ 18　　This appeal followed.

¶ 19　　　　　　　　　　II. ANALYSIS

¶ 20　　In October 2025, respondent's appointed appellate counsel filed a motion to withdraw and attached a supporting memorandum of law, citing *Anders*. She concluded that after careful examination of the record, "there exist no meritorious issues to raise on appeal." This court granted respondent leave to file a response to the motion for leave to withdraw on or before November 17, 2025; none was filed.

¶ 21　　　　　　　　　　A. *Anders* Motion

¶ 22　　The procedure for counsel to withdraw as outlined in *Anders* applies to appeals

from terminations of parental rights. *In re Keller*, 138 Ill. App. 3d 746, 747-48 (1985). Appellate counsel's request to withdraw must, first, be accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders*, 386 U.S. at 744; *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). "In other words, appellate counsel must set out any irregularities in the trial process or other potential errors, which, although in his judgment are not a basis for appellate relief, might arguably be meritorious in the judgment of the client, another attorney, or the court." (Emphasis omitted.) *Id.* Second, as to any such issue, counsel must (a) identify the issue, (b) sketch the argument in support of the issue that could conceivably be raised on appeal, and then (c) explain the argument's frivolity. *Id.*; *In re Austin C.*, 353 Ill. App. 3d 942, 945 (2004). "Third, counsel must conclude the case presents no viable grounds for appeal." *S.M.*, 314 Ill. App. 3d at 685. As a threshold matter, appellate counsel should review the record as it relates to both (1) the finding of unfitness and (2) the best-interest determination. *Id.* at 685. If we agree with counsel's brief, we will grant the request to withdraw and dismiss the appeal as meritless. *Anders*, 386 U.S. at 744.

¶ 23 In her *Anders* brief, counsel has considered both the finding of unfitness and the best-interest determination. Counsel (a) identifies each issue, (b) sketches the arguments in support of the issues that could conceivably be raised on appeal, and then (c) explains why she believes the arguments are frivolous. Counsel concludes that the case presents no viable grounds for appeal. For the reasons discussed below, we agree.

¶ 24                                    B. Unfitness Finding

¶ 25 At a fitness hearing for the termination of parental rights, it is the State's burden to prove unfitness by clear and convincing evidence. *In re Al. P.*, 2017 IL APP (4th) 170435, ¶ 40; 705 ILCS 405/2-29(2), (4) (West 2024). "Unfit person" is defined in section 1(D) of the

- 6 -

Adoption Act (750 ILCS 50/1(D) (West 2024)). A parent may be found unfit for failing "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2024). *In re C.N.*, 196 Ill. 2d 181, 210-11 (2001) (holding that section 1(D)(m) provides two independent bases for a finding of unfitness: failure to make reasonable efforts and failure to make reasonable progress).

¶ 26        The trial court is in the best position to make a finding of unfitness because "the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court." *In re Brown*, 86 Ill. 2d 147, 152 (1981). "Accordingly, the trial court's findings should be given great deference." *Id.* The appellate court will not reverse a finding of unfitness unless it was against the manifest weight of the evidence. *Id.* "A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005).

¶ 27        In this case, respondent stipulated to her unfitness. When a trial court accepts an admission of parental unfitness in termination of parental rights proceedings, due process requires that the trial court ensure the State has a basis for its allegation by way of a factual proffer. *In re M.H.*, 196 Ill. 2d 356, 368 (2001). This requirement additionally serves to make certain that a parent's admission of unfitness is knowing and voluntary. *Id.* at 365-66; See *In re M.H.*, 313 Ill. App. 3d 205, 215 (2000) (finding a factual proffer necessary to prevent a parent from "understand[ing] the State's alleged grounds of unfitness but *** not realiz[ing] that his or her conduct does not fall within those allegations").

¶ 28        Here, the State proffered that testimony would establish that respondent was unfit due to a failure to perform court-ordered duties. The trial court found that respondent's

stipulation was adequately proven by the State's proffer and exhibits and found that she failed to make reasonable progress toward the return of the minor to her care during the nine-month period. Respondent did not object to the stipulation. The record supports the conclusion that the stipulation was knowing, voluntary, and supported by a sufficient factual basis.

¶ 29　　Furthermore, the record does not support a finding that the trial court's decision was against the manifest weight of the evidence. The court considered the proffer and evidence, "[i]ncluding such things as she had not completed the vast majority of her services, inconsistent drops, inconsistent visits, and no stable, safe or suitable housing for the return of the child." While there is evidence that respondent completed some aspects of her service plan, such as a parenting class, mental health assessment, and drug and alcohol assessment referral, it does not support that the opposite conclusion of the court is clearly apparent.

¶ 30　　Thus, we agree with counsel that there is no meritorious argument that could be made on appeal with regard to the trial court's finding of unfitness.

¶ 31　　　　　　　　　C. Best-Interest Finding

¶ 32　　Following a finding of unfitness, the State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *In re D.T.*, 212 Ill. 2d 347, 364-67 (2004). In making the best-interest determination, the trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act:

　　　　"(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

　　　　(b) the development of the child's identity;

　　　　(c) the child's background and ties, including familial, cultural, and religious;

- 8 -

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals, including the child's wishes regarding available permanency options and the child's wishes regarding maintaining connections with parents, siblings, and other relatives;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child, including willingness to provide permanency to the child, either through subsidized guardianship or through adoption." 705 ILCS 405/1-3(4.05) (West 2024).

¶ 33    The trial court's best-interest determination does not need to contain an explicit reference to each of these factors, and the reviewing court does not need to rely on any basis used by the trial court below to affirm its decision. *In re M.H.*, 2025 IL App (4th) 250271, ¶ 29;

*In re A.H.*, 2025 IL App (4th) 250026, ¶ 53.

¶ 34      On review, the appellate court will not disturb a trial court's finding that termination is in the child's best interest unless it was against the manifest weight of the evidence, meaning the opposite conclusion is clearly evident. *In re H.D.*, 343 Ill. App. 3d 483, 494 (2003); *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 35      Here, the trial court explicitly considered nine of the statutory factors provided in section 1-3(4.05) of the Juvenile Court Act. See 705 ILCS 405/1-3(4.05) (West 2024). It concluded that four weighed in favor of termination, two weighed against termination, and three were neutral. The court noted that respondent had made some changes for the better but that it did not see any time in the near future when she would be able to provide for the schooling, education, safety, and medical needs of the minor to the same extent as the foster parent.

¶ 36      While respondent had recently obtained sobriety and employment and was seeking housing, these facts are insufficient to establish that the opposite conclusion of the trial court is clearly apparent. The court was careful in its analysis, stressed the difficulty of making the decision, and discussed the relevant statutory factors before concluding that they weighed in favor of terminating respondent's parental rights.

¶ 37      Accordingly, we agree with counsel that there is no meritorious argument that could be made on appeal with regard to the trial court's best-interest finding.

¶ 38                                      D. Additional Meritorious Issues

¶ 39      Our review of the record and applicable law leads us to conclude that there are no other potentially meritorious issues on appeal. Accordingly, we grant counsel's motion to withdraw.

¶ 40                                      III. CONCLUSION

¶ 41　　　　　For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 42　　　　　Affirmed.