NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250936-U

NOS. 4-25-0936, 4-25-0937 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.G. and N.G., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | Nos. 24JA27 |
| v. | ) | 24JA28 |
| Emily B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Dwayne A. Gab, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1　　*Held*:　The appellate court affirmed, finding the trial court's fitness and best-interest
　　　　　determinations were not against the manifest weight of the evidence.

¶ 2　　　　In May 2025, the State filed a petition to terminate the parental rights of

respondent, Emily B., as to her minor children, A.G. (born in April 2014) and N.G. (born in June

2017). In August 2025, the trial court entered an order terminating respondent's parental rights.

The court also terminated the parental rights of the minors' father, Gary G., who is not a party to

this appeal.

¶ 3　　　　In this consolidated appeal, respondent argues the trial court's findings that she

was unfit and that termination of her parental rights was in the minors' best interests were against

the manifest weight of the evidence. We affirm.

¶ 4　　　　　　　　　　　　　　I. BACKGROUND

¶ 5    In February 2024, the State filed separate petitions for adjudication of wardship of A.G. and N.G., alleging they were neglected and abused under sections 2-3(1)(a) and 2-3(2)(i), (v) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a), 2-3(2)(i), (v) (West 2024)). The petitions alleged that A.G. and N.G. were neglected in that the minors were not receiving the proper care and supervision necessary for their well-being, and they were abused in that they were physically abused by their father and their father inflicted excessive corporal punishment upon them. Following a shelter care hearing, the trial court found there was probable cause to believe the allegations and ordered that the minors be placed in the temporary custody of the Illinois Department of Children and Family Services (DCFS).

¶ 6    At an August 2024 adjudicatory hearing, respondent stipulated that the minors were neglected. The trial court accepted the stipulation and placed the minors in the care of DCFS, ordering respondent to comply with the terms of her service plan and correct the conditions that required the minors to be in care or risk termination of her parental rights. At the September 2024 dispositional hearing, the court found respondent unfit, made the minors wards of the court, and placed custody and guardianship of the minors with DCFS.

¶ 7    On May 21, 2025, the State filed separate petitions for termination of respondent's parental rights as to A.G. and N.G. The petitions alleged that respondent was unfit because she had (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2024)); (2) abandoned the minors (*id.* § 1(D)(a)); (3) deserted the minors for more than three months preceding the filing of the petitions (*id.* § 1(D)(c)); (4) demonstrated substantial neglect of the minors (*id.* § 1(D)(d)); (5) failed to protect the minors from conditions in their environment injurious to the their welfare (*id.* § 1(D)(g)); (6) failed to make reasonable efforts to correct the conditions which were the

- 2 -

basis for the removal of the minors within nine months following an adjudication of neglect, specifically, from August 15, 2024, through May 15, 2025 (*id.* § 1(D)(m)(i)); and (7) failed to make reasonable progress toward the return of the minors to her in the same period (*id.* § 1(D)(m)(ii).

¶ 8                                          A. Fitness Hearing

¶ 9         In August 2025, the trial court held a fitness hearing. Respondent's counsel moved to continue the hearing because respondent was absent. Counsel stated he had no contact with respondent and no information about her failure to appear. The court denied the motion and proceeded with the hearing. On the State's motion and without objection, the court took judicial notice of the adjudicatory order, dispositional order, and the order finding unknown father in default.

¶ 10        The only witness examined by the parties was Jessica Griesbach, a caseworker with DCFS who had been assigned to the cases of A.G. and N.G. since July 2024. She stated the case began in 2023 after an intact family services worker performed an unannounced visit to respondent's home and witnessed one of respondent's other children lighting the house on fire. She further stated respondent had issues with alcoholism.

¶ 11        In discussing respondent's compliance with her service plan, Griesbach testified, "[Respondent] was asked to cooperate and participate. She was asked to get a mental health assessment and engage in that treatment. She was referred to parenting classes, substance abuse assessments ***, [and] domestic violence classes." She stated respondent did not complete any of the assessments or programs for which she was referred. She was also not aware of any employment respondent had throughout the life of the case, and she did not know where respondent was currently living. Griesbach further testified that, during the case, she was on

maternity leave between September 20, 2024, and January 2, 2025. As of the hearing, the last time she had heard from respondent was in a message respondent left in November 2024 that Griesbach received when she returned from maternity leave.

¶ 12    Griesbach also testified respondent did not have a phone or car but was provided with bus tokens and was able to use a phone owned by the father of A.G. and N.G. She stated the last time respondent visited the minors was on September 25, 2024, and she was not aware of any contact via telephone or Zoom since then. Following this visit, there was a critical decision not to allow further visitation because A.G. had found a bottle of alcohol in respondent's purse and was emotionally dysregulated for a few days after. Griesbach believed A.G. was dysregulated because alcoholism was one of the reasons the minors had come into care. Griesbach acknowledged she was not present during this visit, but she had reviewed the notes of a caseworker who was.

¶ 13    The trial court found respondent was unfit by clear and convincing evidence because she had (1) "failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare"; (2) "abandoned the minors"; (3) "deserted the minors for more than three months preceding the commencement of this action"; (4) "demonstrated substantial neglect of the minors in a continuous and repeated manner"; (5) "failed to protect the child[ren] from conditions within [their] environment injurious to the child[ren]'s welfare"; (6) "failed to make reasonable efforts to correct the conditions which were the basis for removal of the minor[s] from her within nine months following the adjudication of neglect *** specifically, August 15, 2024, through May 15, 2025"; and (7) "failed to make reasonable progress toward the return of the minors to her" in the same period. The court stated it was relying on the testimony of Griesbach, and that she had presented "sufficient evidence to this Court regarding a complete

lack of any cooperation or progress or attempts to even make progress in regard to the reasonably related services required under the service plan."

¶ 14                                    B. Best-Interests Hearing

¶ 15        Following its fitness ruling, the trial court immediately proceeded with a best-interests hearing. On the State's motion and without objection, the court took judicial notice of the fitness hearing. Again, Griesbach was the only witness examined by the parties. Griesbach testified A.G. had been placed with a foster parent in Urbana, Illinois, since November 2024. She believed all his needs were being met, he was doing "really good," and the foster parent had told her he was willing to adopt A.G. She emphasized the strength of the bond between A.G. and the foster parent, stating "they act like they have been together forever."

¶ 16        With regards to N.G., Griesbach testified he was placed in a temporary foster home in Morton, Illinois, in February 2025. She stated he was "doing okay," they were currently working to find him an adoptive home, and they hoped to place him in Urbana with A.G. due to the strong bond between the siblings. She stated that A.G. and N.G. were meeting for an average of about six hours per month at the time, and they expressed discontent about not being able to see one another. She stated she believed the agency would be able to find an adoptive home for him, although none were lined up. On cross-examination, she stated he could also potentially be placed in a state that does not border Illinois. Additionally, she stated she had never personally seen either child interact with respondent.

¶ 17        Griesbach opined it was in the best interests of the minors to terminate respondent's parental rights because "there [hadn't] been any progress throughout the case."

¶ 18        The trial court found it was in the best interests of both A.G. and N.G. that respondent's parental rights be terminated. With regard to A.G., the court stated there was "a

more traditional" foster home situation, with "bonding, stability, love, and affection." It continued that his needs were being met, the foster parent wanted permanency, and there was everything normally seen in a parent-child relationship. The court stressed that this type of bond was "fundamentally in his best interest."

¶ 19 With regard to N.G., the trial court discussed how uncertainty about the future and one's parents impacts a child at that age. It stressed, "[A]t least with the parents' rights terminated, the child can feel that there is a future where he might experience the same type of situation" as A.G. The court also stated it could not see how it would be in the best interests of N.G. to continue with the uncertainties associated with having parents that still have rights toward him.

¶ 20 This appeal followed.

¶ 21 II. ANALYSIS

¶ 22 On appeal, respondent argues the trial court erred in finding her unfit and finding it was in the best interests of both minors for her parental rights to be terminated.

¶ 23 A. Unfitness Finding

¶ 24 Section 2-29(2) of the Juvenile Court Act provides a two-step process to terminate parental rights. 705 ILCS 405/2-29(2) (West 2024). First, the State must prove by clear and convincing evidence that a parent is "unfit." *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). "Unfit person" is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)).

¶ 25 The trial court is in the best position to make a finding of unfitness because "the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court." *In re Brown*, 86 Ill. 2d 147, 152 (1981). "Accordingly, the trial court's findings should be given great deference." *Id.* The appellate court will not reverse a finding of

unfitness unless it is against the manifest weight of the evidence. *Id.* "A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Additionally, "[a] parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *Id.* at 349.

¶ 26　　　　　In this case, the trial court found that respondent was unfit on seven distinct grounds under section 1(D), namely, subsections (a) (abandonment), (b) (failure to maintain a reasonable degree of interest, concern, or responsibility), (c) (desertion for more than three months), (d) (substantial continued neglect), (g) (failure to protect the minor from their environment), (m)(i) (failure to make reasonable efforts to correct the conditions that led to the removal of the minor), and (m)(ii) (failure to make reasonable progress toward return of minor). 750 ILCS 50/1(D)(a), (b), (c), (d), (g), (m)(i), (m)(ii) (West 2024).

¶ 27　　　　　Respondent argues, because the sole witness was on maternity leave between September 20, 2024, and January 2, 2025, the trial court did not have clear and convincing evidence that respondent was unfit during this period. Respondent asserts, in assessing parental fitness based on reasonable progress, the court may consider only the evidence from the relevant nine-month time period, which in this case spans August 15, 2024, through May 15, 2025 (citing *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007)). Respondent asserts the "gap in time prevents the Court, or should prevent the Court, from finding that the State satisfied its burden of clear and convincing evidence of unfitness within the time frame considered by the Court."

¶ 28　　　　　Respondent does not address that only two of the seven grounds under which the trial court found her unfit are subject to review limited to a nine-month period. For example, the court found respondent was unfit under section 50/1(D)(b) of the Adoption Act (750 ILCS

50/1(D)(b) (West 2024)) because she had "failed to maintain a reasonable degree of interest, concern, or responsibility as to the [minors'] welfare."

¶ 29 Unlike reasonable progress or efforts, the trial court is not limited to a specific time frame in evaluating unfitness on this ground. *In re M.J.*, 314 Ill. App. 3d 649, 656 (2000). "The parent may be found unfit for failing to maintain either interest, concern, or responsibility; proof of all three is not required." *In re Richard H.*, 376 Ill. App. 3d 162, 166 (2007). "[A] parent is not fit merely because she has demonstrated some interest or affection towards her child"; rather, her "interest, concern, or responsibility must be reasonable." (Internal quotation marks omitted.) *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005) (citing *In re E.O.*, 311 Ill. App. 3d 720, 727 (2000)). In assessing whether a parent has demonstrated a reasonable degree of interest, concern, or responsibility for a child's welfare, the reviewing court should consider indicators of engagement, such as the parent's efforts to visit and maintain contact with the child and inquiries into the child's well-being. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 72.

¶ 30 At the time of the hearing, respondent had not made contact with the minors or caseworker since November 2024. Evidence suggests she did not own a phone or car during this period, and the trial court considers a parent's efforts in the context of such obstacles. See *id.* However, respondent had demonstrated the ability to use the phones of others to contact the caseworker. At the time of the hearing, there had been no indicators of engagement or efforts for at least eight months, including more than seven months after Griesbach returned from maternity leave and the entire period between the filing of the termination petitions and the fitness hearing. Accordingly, it was not against the manifest weight of the evidence for the trial court to find respondent unfit on this ground.

¶ 31 As only a single ground is required to find respondent unfit, we need not evaluate

the other grounds. See *Gwynne P.*, 215 Ill. 2d at 349.

¶ 32                                    B. Best-Interests Findings

¶ 33          After the trial court makes a finding of unfitness, the State must prove by a

preponderance of the evidence it is in the child's best interests that parental rights be terminated.

*In re D.T.*, 212 Ill. 2d 347, 366 (2004). At this stage, "[t]he issue is no longer whether parental

rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should*

be terminated." (Emphases in original.) *Id.* at 364.

¶ 34          In making a best-interests determination, the trial court must consider the

following factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-

3(4.05) (West 2024)):

> "(a) the physical safety and welfare of the child, including food, shelter,
> health, and clothing;
>
> (b) the development of the child's identity;
>
> (c) the child's background and ties, including familial, cultural, and
> religious;
>
> (d) the child's sense of attachments, including:
>
>> (i) where the child actually feels love, attachment, and a sense of
>> being valued (as opposed to where adults believe the child should feel
>> such love, attachment, and a sense of being valued);
>>
>> (ii) the child's sense of security;
>>
>> (iii) the child's sense of familiarity;
>>
>> (iv) continuity of affection for the child;
>>
>> (v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals, including the child's wishes regarding available permanency options and the child's wishes regarding maintaining connections with parents, siblings, and other relatives;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child, including willingness to provide permanency to the child, either through subsidized guardianship or through adoption."

On review, the appellate court will not disturb a trial court's finding that termination is in the child's best interests unless it is against the manifest weight of the evidence, meaning the opposite conclusion is clearly evident. *In re H.D.*, 343 Ill. App. 3d 483, 494 (2003); *T.A.*, 359 Ill. App. 3d at 960.

¶ 35                    1. *Uncertainty of the Minors' Placements*

¶ 36        Respondent argues because there was uncertainty as to the future placements of A.G. and N.G., the trial court's decision to terminate her parental rights was against the manifest weight of the evidence. We disagree.

¶ 37        First, respondent is incorrect that A.G.'s future is uncertain. Griesbach testified that A.G.'s foster parent wished to adopt him and the two had a very strong bond. The testimony suggests A.G. has a relatively certain future of adoption with the current foster parent.

¶ 38    Second, although N.G.'s placement remains uncertain, reversing the trial court's decision would not provide him with any greater stability. At the time of the hearing, respondent had last contacted Griesbach in November 2024 and had last visited the minors in September 2024. After November, respondent demonstrated no indication of any efforts made or a desire to act as the minors' permanent caregiver. As discussed by the court, maintaining the parental rights of respondent would not provide the minors with any greater certainty. With termination, the minors may at least have permanence in that their future lies in a goal of adoption and not a return to respondent.

¶ 39    While respondent does not refer to any of the factors set forth in section 1-3(4.05), uncertainty is related to "the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives." 705 ILCS 405/1-3(4.05)(g) (West 2024). For the reasons stated, terminating respondent's parental rights offers a greater opportunity for permanence for the minors. Accordingly, the trial court's best-interests determination was not against the manifest weight of the evidence.

¶ 40    2. *Sufficiency of the Evidence*

¶ 41    Respondent also argues that, as in *In re Gwynne P.*, 346 Ill. App. 3d 584 (2004), *aff'd*, 215 Ill. 2d 340 (2005), there was insufficient evidence offered by the State for the trial court to make a reasoned and informed decision as to the minors' best interests. Respondent does not state why she believes the evidence was lacking or what would make it sufficient. Regardless, we disagree.

¶ 42    Respondent's reliance on *Gwynne P.* is misplaced. In *Gwynne P.*, the appellate court found, considering the evidence presented to the trial court, the determination that it was in the child's best interests to terminate the parental rights of the respondents was not against the

manifest weight of the evidence and affirmed the judgment of the trial court. *Id.* at 601, 603. While the *Gwynne P.* court found that some of the fitness determinations were against the manifest weight of the evidence, it made these conclusions because the evidence supported the conclusion opposite of the one the trial court made, not because the evidence was insufficient for the trial court to make a reasoned, informed decision. *Id.* at 593, 595-97, 599. For example, the mother in *Gwynne P.* sent multiple letters seeking to schedule visits with the child, and she completed a psychiatric evaluation and parenting classes. *Id.* at 595. Such evidence provided affirmative grounds to conclude the mother made progress toward reunification. Therefore, the appellate court's determinations were not based on the absence of evidence.

¶ 43        Furthermore, this court has affirmed the decision of the trial court in a termination proceeding where the State has provided only a single witness. See, *e.g.*, *In re J.B.*, 2019 IL App (4th) 190537. The witness in this case, Griesbach, demonstrated knowledge and experience with the cases of the minors as the DCFS caseworker assigned to both minors between July 2024 and August 2025. She answered questions from the parties coherently and provided her recommendation to the trial court. She testified that respondent failed to abide by the service plan, had not made efforts to visit with the minors in over eight months, had not demonstrated she was employed or had stable housing, and had not demonstrated a desire to support the minors. She further testified that A.G. had a loving parent-child relationship with his foster parent and that the placement was adoptive. She also stated that N.G. was doing okay, she believed the agency would find an adoptive home for him, and that they hoped to place him in Urbana because of the strong bond between the siblings. Moreover, at the hearing, respondent made no suggestion to the trial court that Griesbach was unreliable or that her testimony was

false. The evidence presented was sufficient for the trial court to make its best-interests determination.

¶ 44                                    III. CONCLUSION

¶ 45         For the reasons stated, we affirm the trial court's judgment.

¶ 46         Affirmed.